IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


UNITED STATES OF AMERICA,

PLAINTIFF,

vs.                                                    No. 06-40154-01-SAC


RAFAEL MERCADO-NAVA,

DEFENDANT.


MEMORANDUM AND ORDER

This case comes before the court on two suppression motions filed by the defendant, which the government opposes.  An evidentiary hearing was held on March 14, 2007, at which the sole evidence offered was the testimony of Trooper Epperly, whom the court finds to be a credible witness.

**Facts**

On December 9, 2006, defendant was driving a tractor-trailer on Interstate 70 in Wabaunsee County, Kansas.  Kansas Highway Patrol Trooper Clint Epperly had placed signs on the highway indicating a drug check lane was ahead and that drug dogs would be in use, thinking that commercial truckers hauling drugs might avoid the checklane.  Defendant

did not avoid the checklane, but pulled into the scale house a little after

12:00 a.m.  Trooper Epperly closed the scale house, had defendant pull to

the side, and asked him to gather his paperwork and meet the trooper in

the scale house.  Defendant complied.

Trooper Epperly found defendant to be very talkative, overly

friendly and sweating, all of which he found to be unusual in mid-winter and

believed to be indicia of nervousness.  He learned that defendant was from

Phoenix and his truck was from California, which the trooper considered to

be drug source areas.  He noticed that defendant's trucking company was

on a DEA watchlist of companies having prior drug involvement, and that it

had a relatively high DOT number, which indicated a recently-formed

company.

After reviewing defendant's paperwork and finding it in order,

the trooper inspected the truck.  He did so for the purpose of complying

with his CVSA certification requirement to inspect 50 commercial vehicles a

year, as well as for purposes of criminal interdiction.  Trooper Epperly is

aware of an increasing use of common carriers for drug trafficking, after

September 11th.

When he entered defendant's cab, he noticed a "very strong"

odor of bondo and paint, which he described as "overwhelming."  Trooper Epperly knew that bondo, a putty filler, was commonly used to help create concealed compartments, and believed that some type of body work had recently been done on the cab for purposes of concealing or furthering illegal activity.

Trooper Epperly then inspected the outside of the cab.  When he looked underneath the cab, he saw that the center of its floor had been lowered, forming an after-market concealed compartment in its undercarriage.  He is able to distinguish between natural compartments manufactured on tractor trailers and concealed compartments added later, and knows of no legitimate, non-criminal reason for the latter. Trooper Epperly believed at that point that defendant was engaging in criminal activity, but desired to wait for a back-up officer.  He called for back-up then finished his truck inspection to allow time for the back-up officer to arrive.

Upon completion of the inspection, Trooper Epperly returned defendant's paperwork to him, told him he was free to leave, then asked if he could ask defendant more questions, to which defendant agreed.  When asked if there were any drugs in the vehicle, defendant gave a "typical response," stating, "Not that I know of."  Trooper Epperly then asked for

3

permission to search the truck, and defendant consented.  In so doing, Trooper Epperly did not use a command voice, touch the defendant, put his hand on his gun, or otherwise attempt to coerce the defendant.

After Lieutenant Albers arrived, Trooper Epperly entered the cab and pulled back the carpet, revealing the aftermarket alterations and a concealed compartment.   He then handcuffed defendant and retrieved and deployed his drug detection dog, Ranger, who gave a positive indication on the interior of the cab.  Trooper Epperly then opened the concealed compartment under the truck cab and found approximately 18 kilograms of cocaine hidden therein.

Trooper Epperly immediately arrested the defendant, found two cell phones on defendant's person, and seized them contemporaneously with his arrest.  Trooper Epperly downloaded the memory of one cell phone and someone else downloaded the memory of the other, also contemporaneously with defendant's arrest.  DEA agents subsequently interviewed defendant and apparently obtained incriminating statements from him, which defendant seeks to suppress.

**Motion to Suppress Drug Evidence and Statements**

Counsel for defendant seeks to suppress all evidence of the

4

cocaine found under the truck cab and defendant's statements, asserting that Trooper Epperly engaged in racial profiling and conducted an illegal, non-consensual search.

### Racial profiling

Defendant asserts that Trooper Epperly "singled him out because he is Hispanic," Dk. 15, p. 3, apparently asserting that the initial stop and/or his detention was based on racial profiling.  Defendant initially stopped his tractor-trailer on his own volition, but the trooper would have been fully justified in stopping him for no reason other than the trooper's desire to do a commercial truck check on the vehicle.  *See United States v. Rios-Pinela*, 2006 WL 2710330, *4 (D.Kan Sept. 20, 2006).  The fact that the trooper asked defendant to exit his vehicle and enter the scale house with his papers is a *de minimus* request, which is a normal incident of a commercial truck check.

Defendant has the burden to show that the officer knew defendant's race or skin color before deciding to stop or detain him, and that his decision was motivated in part by defendant's race or skin color. *See United States v. Aliperti*, 2002 WL 1634440, *3  (D.Kan. 2002); *United States v. Villanueva*, 157 F. Supp. 2d 1184, 1190 (D.Kan. 2001); *Rios-*

*Pinela*, 2006 WL 2710330.  No evidence was presented tending to show that defendant's race played any part in the trooper's decision to initially stop defendant or to detain him and question him about the truck. Accordingly, this theory fails.

### Consent

Defense counsel contends that defendant never consented to a search of the truck, but that if he did, it was involuntary.  No evidence was presented in support of this assertion.  Instead, Trooper Epperly's testimony is sufficient to firmly convince the court that defendant freely and voluntarily consented to the search of his vehicle.

Additionally, inspections of commercial vehicles do not require consent and are not premised on an officer's reasonable suspicion that a specific individual is involved in a traffic offense or in criminal activity. Instead, "[a] regulatory search is justified if the state's interest in ensuring that a class of regulated persons is obeying the law outweighs the intrusiveness of a program of searches or seizures of those persons." *United States v. Seslar*, 996 F.2d 1058, 1061 (10th Cir.1993).  *See United States v. Herrera*, 444 F.3d 1238, 1246 (10th Cir.2006); *State v. Williams*, 8 Kan. App. 2d 14, 20 (1982).  This court has recently held that the Kansas

regulatory scheme satisfies the applicable test, *see United States v.Rios-Pinela*, 2006 WL 2710330 (D. Kan. 2006).  Accordingly, no Fourth Amendment violation can be shown by the trooper's regulatory search of defendant's commercial vehicle.

Even absent the regulatory justification for this search, Trooper Epperly had probable cause to believe that defendant was engaged in criminal activity, prior to the vehicle search.  He knew defendant's trucking company was on a DEA watchlist of companies having prior drug involvement, and that it had a relatively high DOT number.  He noticed that defendant was overly friendly, very talkative, and sweating.  He saw that defendant was from Phoenix and his truck was from California, which he considered to be drug source areas.  He smelled a strong odor of putty and paint inside the truck, and viewed an alteration to the undercarriage of the truck, which led him to believe that the floor of the cab had been dropped for purposes of concealing a compartment to be used for illegal activity. These factors collectively formed probable cause that defendant was engaged in criminal activity, sufficient to justify the search[1] of the hidden

---

[1]Defendant has filed, without leave of court, a pleading captioned "Supplement to Motion to Suppress", Dk. 18.  The unauthorized motion attaches records relating to the drug dog, Ranger, and contends that he has given false and weak indications, contrary to Trooper Epperly's

compartment in which drugs were found.  *See United States v. Orrego-Fernandez*,  78 F.3d 1497, 1502 -1505 (10th Cir.1996).

In short, no valid basis appears from the record for suppressing the cocaine or defendant's statements, which are alleged to be the fruit of the illegal search of the truck.

**Motion to Suppress Cellular Telephone Contents**

Defense counsel contends that two of defendant's cellular telephones were illegally searched without a warrant, and that the search was remote in time or place from the arrest, citing *United States v. Chadwick*, 433 U.S. 1 (1977). The government counters that the phones were legally searched incident to arrest.

The sole evidence regarding this issue is that two cellular telephones were seized from defendant's person, without a warrant and without consent, contemporaneously with defendant's arrest, and their memories were downloaded at that time, before defendant was processed or booked.  No evidence suggests that the contents of the phones were protected by a password or that the information retrieved by the troopers

_____

testimony.  Because the reliability of the drug dog is irrelevant to the court's holding, the court does not reach this new issue, but cautions counsel to seek leave of court for future filings.

consisted of anything other than stored numbers of outgoing and incoming calls.

### Standing

The government has raised the issue of defendant's standing to contest the search of the cell phone.  "It is the defendant's burden to establish standing to challenge a fourth amendment violation." *United States v. Dewitt*, 946 F.2d 1497, 1499-1500 (10th Cir.1991).  "A defendant may not challenge an allegedly unlawful search or seizure unless he demonstrates that his own constitutional rights have been violated," and, in the context of a search, "the defendant must show that he had a subjective expectation of privacy in the premises searched and that society is prepared to recognize that expectation as reasonable." *United States v. Higgins*, 282 F.3d 1261, 1270 (10th Cir. 2002).

Traditionally, there has been no reasonable expectation of privacy in the numbers dialed on one's phone, since by voluntarily conveying numerical information to the telephone company and exposing that information to its equipment in the ordinary course of business, one loses any reasonable expectation of privacy in the existence and identity of such calls.  *Smith v. Maryland*, 442 U.S. 735, 744 (1979).  The same

rationale has recently been applied to cell phones.  *See Beckwith v. Erie County Water Authority,* 413 F. Supp. 2d 214, 223 -224 (W.D.N.Y. 2006).

Other courts have found that the expectation of privacy in similar cases is analogous to the expectation of privacy one has in the contents of a closed container, *see United States v. Blas*, 1990 WL 265179 (E.D. Wis. 1990) (finding that an individual has the same expectation of privacy in a pager, computer or other electronic data storage and retrieval device he possesses as in a closed container), or in a personal telephone book containing directory information, *see United States v. Meriwether*, 917 F.2d 955,*958 (6th Cir.1990) (finding no subjective expectation of privacy by sender of a message to a pager, and declining to address "the question of whether society is prepared to recognize as reasonable an expectation of privacy in messages sent to pagers of this type, in light of their ubiquitous use in drug trafficking.") *Cf United States v. Slater*, 971 F.2d 626, 637 (10th Cir.1992) (stating that a cell phone is a "recognized tool of the trade in drug dealing").

Here, defendant did not assert ownership over either cell phone, did not testify to his expectation of privacy at the suppression hearing, and did not present any testimony at the suppression hearing that

he had a legitimate possessory interest in either cell phone or had taken

steps to insure his privacy in the items seized.  The sole relevant fact is

that the cell phones were taken from defendant's person.  "Mere physical

possession or control of property is not sufficient to establish standing to

object to a search of that property.  *United States v. Arango*, 912 F.2d 441,

444-446 (10th Cir.1990)."  *United States v. Conway*, 73 F.3d 975, 979

(10th Cir.1995).  Accordingly, the court finds that defendant has failed to

establish standing to challenge the search of the cell phones.

Nonetheless, the court reaches the substantive issue in the

event its standing analysis is in error.  It is beyond cavil that warrantless

searches are unreasonable, absent well known exceptions.

> A warrantless search violates the Fourth Amendment unless it falls
> within one of the enumerated exceptions to the warrant requirement.
> *See, e.g., United States v. Edwards*, 242 F.3d 928, 937 (10th
> Cir.2001). These exceptions include, among others, warrantless
> searches incident to a lawful arrest. *Chimel v. California*, 395 U.S.
> 752, 762-63, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969).

*United States v. Rollins*, 190 Fed. Appx. 739, 743, 2006 WL 3007493, *2

(10th Cir. 2006).  The rationale for the exception allowing the

contemporaneous search of a lawfully arrested person without a warrant is

to promote safety and prevent the concealment or destruction of evidence.

*Chimel,* at 763-64, 89 S. Ct. 2034.  The government bears the burden of

establishing the reasonableness of the search under one of the exceptions to the warrant requirement.  *See Katz v. United States*, 389 U.S. 347, 357(1967).

Traditional search warrant exceptions apply to the search of cell phones.  See e.g., *United States v. Parada,* 289 F. Supp. 2d 1291, 1304 (D. Kan. 2003) (finding exigent circumstances justified officer's accessing cell phone's memory of stored numbers of incoming phone calls); *United States v. Morales-Ortiz,* 376 F. Supp. 2d 1131 (D. N.M. 2004) (upholding search of cell phone's memory to retrieve names and numbers under the inevitable discovery doctrine); *United States v. Finley*, 477 F.3d 250, (5th Cir. 2007) (upholding retrieval of call records and text messages from cell phone as search incident to arrest); *United States v. Reyes*, 922 F. Supp. 818, 833 (S.D.N.Y. 1996) (finding search incident to arrest justified warrantless search of memory of pager #1 taken from a bag attached to defendant's wheelchair, general consent justified search of memory of Pager # 2, but retrieval of numeric messages from Pager # 3 was unconstitutional.)  Where the accessing of memory is a valid search incident to arrest, the Court need not decide whether exigent circumstances also justify the officer's retrieval of the numbers from it.  *See*

*Reyes*, 922 F. Supp. at 833.

The propriety of a search incident to arrest depends on the lawfulness of the arrest and the contemporaneity of the search.

> The inquiry into the propriety of a search incident to arrest is a dual one. First, we ask whether the arrest was in fact lawful. *United States v. Anchondo*, 156 F.3d 1043, 1045 (10th Cir.1998). Second, we examine whether the search was contemporaneous, both spatially in terms of areas within the defendant's "immediate control" and temporally in terms of the incidents rendering the arrest permissible. *Edwards*, 242 F.3d at 937.

Rollins, 190 Fed. Appx. 739, 743, 2006 WL 3007493, *2.  See *United States v. Torres-Castro*, 470 F.3d 992, 998 (10th Cir. 2006) ("The primary factor for determining whether a search is incident to an arrest is the time between the search and the actual arrest."); *United States v. Lugo*, 978 F.2d 631, 634 (10th Cir. 1992) (a search is incident to an arrest if it is "contemporaneous" with the arrest).

Here, no allegation is made that defendant's arrest was unlawful.  Instead, defendant's sole challenge is to the remoteness of the search.  In *Chadwick,* the Supreme Court "adopted a narrow exception to the incident to arrest doctrine, holding that a warrantless search of seized property cannot be justified when the search is remote in time or place from the arrest." *United States v. Chan*, 830 F. Supp. 531, 535(N.D.Cal.1993)

(citing *Chadwick*, 433 U.S. at 13 -15).  The uncontradicted facts in this case

show that the search of the cell phones was contemporaneous with

defendant's arrest, unlike the search of a footlocker 90 minutes after

defendant's arrest in *Chadwick*.

   The 5th Circuit recently upheld the warrantless retrieval of call

records and text messages from a cell phone as a search incident to arrest,

stating:

> It is well settled that "in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." *United States v. Robinson*, 414 U.S. 218, 235, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973).  Police officers are not constrained to search only for weapons or instruments of escape on the arrestee's person; they may also, without any additional justification, look for evidence of the arrestee's crime on his person in order to preserve it for use at trial.  *See id.* at 233-34, 94 S. Ct. 467. The permissible scope of a search incident to a lawful arrest extends to containers found on the arrestee's person.  *United States v. Johnson*, 846 F.2d 279, 282 (5th Cir.1988) (per curiam); *see also New York v. Belton*, 453 U.S. 454, 460-61, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981) (holding that police may search containers, whether open or closed, located within arrestee's reach); *Robinson*, 414 U.S. at 223-24, 94 S. Ct. 467 (upholding search of closed cigarette package on arrestee's person).

*United States v. Finley*, 477 F.3d 250, 259-260 (5th Cir. 2007).  *See United*

*States v. Murphy,* 2006 WL 3761384, *3 (W.D.Va. 2006) (upholding search

of cell phone's text messages as incident to arrest); *Cf Belton*, 453 U.S. at

14

461, 101 S. Ct. at 2864 (holding "[s]uch a container may, of course, be

searched whether it is open or closed, since the justification for the search

is not that the arrestee has no privacy interest in the container, but that the

lawful custodial arrest justifies the infringement of any privacy interest the

arrestee may have.")

      The need to preserve evidence is underscored where evidence

may be lost due to the dynamic nature of the information stored on and

deleted from cell phones or pagers.  *See United States v. Zamora*, 2006

WL 418390, *4 (N.D.Ga. 2006) (upholding search of cell phones and their

electronic contents on basis of exigent circumstances where "the function

and limitation of the cell-phone technology ... motivated the investigating

agents to conduct an immediate search of the phones, rather than seek a

warrant."); *Parada*, 289 F. Supp. 2d at 1304.

> An officer's need to preserve evidence is an important law
> enforcement component of the rationale for permitting a search of a
> suspect incident to a valid arrest.  *See United States v. Robinson*,
> 414 U.S. 218, 226, 234-35, 94 S. Ct. 467, 472-73, 38 L. Ed. 2d 427
> (1973).  Because of the finite nature of a pager's electronic memory,
> incoming pages may destroy currently stored telephone numbers in a
> pager's memory.  The contents of some pagers also can be
> destroyed merely by turning off the power or touching a button.  *See,
> e.g., United States v. Meriwether*, 917 F.2d 955, 957 (6th Cir.1990).
> Thus, it is imperative that law enforcement officers have the authority
> to immediately "search" or retrieve, incident to a valid arrest,
> information from a pager in order to prevent its destruction as

evidence.

*United States v. Ortiz*, 84 F.3d 977, 984 (7th Cir.1996) (affirming denial of motion to suppress.)  *See United States v. Hunter*, 166 F.3d 1211, 1998 WL 887289, *3 (4th Cir.1998) (denying motion to suppress evidence of telephone numbers stored in defendant's pager, since discovered in search incident to arrest); *United States v. Reyes,* 922 F. Supp. 818, 833 (S.D.N.Y.1996); *United States v. Chan*, 830 F. Supp. 531, 535-36 (N.D.Cal.1993) (upholding retrieval of numbers from the memory of a pager seized from the defendant's person as incident to arrest).

The court finds that under the circumstances of this case, the government has met its burden to show that the troopers' search of the cell phones by accessing stored numbers was justified as a search incident to arrest.

### Privacy Act violation

In addition to the Fourth Amendment challenge, defendant asserts that the retrieval of information from the cell phones violated the Electronic Communications Privacy Act ("ECPA"). In 1986, the ECPA amended the Omnibus Crime Control and Safe Streets Act of 1968, commonly referred to as the Federal Wiretap Act.  Title I of the ECPA

16

proscribes " 'intentionally intercept[ing] ... any wire, oral, or electronic communication', unless the intercept is authorized by court order." *Steve Jackson Games, Inc. v. United States Secret Service*, 36 F.3d 457, 460 (5th Cir.1994) (citing 18 U.S.C. § 2511(1)(a)).  Title II of the ECPA "generally proscribes unauthorized access to stored wire or electronic communications." *Id., at 462.*  "Generally, a search warrant, rather than a court order, is required to obtain access to the contents of a stored electronic communication." *Id.* at 462 n. 7; *see also* 18 U.S.C. § 2703(a). As a result, the same exceptions to the warrant requirement apply to this section as apply to any other warrantless search.  *Reyes*,  922 F. Supp. 818, 837 (S.D.N.Y.,1996).

Here, although the facts are few, it is clear that officers did not intercept any electronic communications, but solely accessed stored information.  Intercepting an electronic communication essentially means acquiring the transfer of data simultaneously with the original transmission of the data.  *See Reyes,*  922 F. Supp. at 836 (finding that retrieving numbers from the memory of a pager is accessing electronic communications that are in electronic storage rather than intercepting electronic communications); *Brown v. Waddell*, 50 F.3d 285 (4th Cir.1995)

17

(finding use of a duplicate digital display pager, which allowed them "to receive any numeric messages sent to [the suspect's] pagers at the same, was an interception under the ECPA); *Steve Jackson*, 36 F.3d at 461-62; *Meriwether*, 917 F.2d at 957 (6th Cir.1990) (holding that pressing a button on a pager to access the pager's memory is not an interception within the meaning of the ECPA).

Because the troopers in this case obtained access to the contents of a stored electronic communication and did not simultaneously intercept electronic communications, the search required a warrant rather than a court order.  Accordingly, the "incident to arrest" exception to the requirement of a search warrant for Fourth Amendment purposes is applicable here as well.

Even if a violation had occurred, exclusion of the evidence is not an available remedy for a Title II violation of the ECPA, *see* 18 U.S.C. §§ 2515, 2708.  The remedy for such a violation, set forth in 18 U.S.C. § 2707, lies in a civil action against the person or entity who violated the statute. *Reyes*,  922 F. Supp. 818, 838 (S.D.N.Y.,1996).

IT IS THEREFORE ORDERED that defendant's motion to suppress evidence seized from cellular phone (Dk. 14) and motion to

suppress evidence (Dk. 15) are denied.

Dated this 12th day of April, 2007, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge